## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| BREEZE SMOKE LLC, | |
| Plaintiff, | CASE NO. |
| vs. | |
| FARID JARJESS, BILAL SAAD, 32271 FORD RD, LLC, GHAZWAN EESO, RIVIAN EESO, SHARF HAUTER, EZ SMOKE SHOP, INC., EZ SMOKE SHOP 2, INC., EZ SMOKE SHOP PLUS, INC., ISMAIL KAID AL-MADRAHI, FOUAD ALJALAL, BILAL MOHAMED ALI, MALEK DISTRIBUTION, INC., FUAD MUGALI, 94 & HAGGERTY, INC., 94 & ZEEB, INC., ABDEL BERRY, MOHASEN MOSLH, WHITE STAR DISTRIBUTION, INC., MOHAMED QASEM, DETROIT WHOLESALE,  HUSSEIN AYYAD, SOLAIMAN MINI MART, LLC, TWAFIG HAIDARA, L ABRO DISTRIBUTOR LLC, LUQMAN ABRO, REVAL DISTRIBUTOR, RIYADH JAFFO HAKEEM, L AND R WHOLESALE LLC, REVAL HAKEEM, and JOHN DOES 1-10. | **JURY TRIAL DEMANDED** |
| Defendants. | |

## <u>VERIFIED COMPLAINT</u>

Plaintiff Breeze Smoke LLC ("Breeze Smoke"), by its undersigned attorneys

Honigman LLP, for its Complaint against Defendants Farid Jarjess, Bilal Saad,

32271 Ford Rd., LLC, Ghazwan Eeso, Rivian Eeso, Sharf Hauter, EZ Smoke Shop, Inc., EZ Smoke Shop 2, Inc., EZ Smoke Shop Plus, Inc., Fouad Aljalal, Ismail Kaid Al-Madrahi, Bilal Mohamed Ali, Malek Distribution, Inc., Fuad Mugali, 94 & Haggerty, Inc., 94 & Zeeb, Inc., Abdel Berry, Mohasen Moslh, White Star Distribution, Inc., Mohamed Qasem, Detroit Wholesale, Hussein Ayyad, Solaiman Mini Mart, LLC, Twafig Haidara, L Abro Distributor LLC, Luqman Abro, Reval Distributor, Riyadh Jaffo Hakeem, L and R Wholesale LLC, Reval Hakeem, and John Does 1-10 (collectively "Defendants"), alleges as follows:

## NATURE OF THE CASE

1.     This is an action for trademark infringement, trade dress infringement and unfair competition under the Lanham Act, 15 U.S.C. §1501, *et seq.*, as well as related state and common law claims, in which Breeze Smoke is seeking immediate injunctive relief and monetary damages for Defendants' willful infringement of Breeze Smoke's valuable trademarks and trade dress.  Specifically, Defendants are retailers and wholesalers who are intentionally selling fake BREEZE-branded disposable electronic vaping devices to consumers in Michigan and elsewhere. Defendants are infringing Breeze Smoke's rights in its BREEZE trademarks and BREEZE trade dress by using them to mislead consumers into believing there exists some affiliation, sponsorship, or connection between Breeze Smoke and Defendants when there is none, and by deliberately trading off of the extensive goodwill that

Breeze Smoke has developed and is continuing to develop in its BREEZE trade dress and BREEZE marks.

## PARTIES, JURISDICTION AND VENUE

2.      Breeze Smoke is a limited liability company organized and existing under the laws of the State of Michigan, with its principal place of business at 4654 Lilly Ct., West Bloomfield, Michigan 48323.

3.      Upon information and belief, Defendant Farid Jarjess is an individual domiciled at 37554 Agar Dr., Sterling Heights, Michigan 48310.

4.      Upon information and belief, Defendant Bilal Saad is an individual domiciled at 1 West Jefferson, Trenton, Michigan 48183.

5.      Upon information and belief, Defendant 32271 Ford Rd, LLC is a limited liability company registered in Michigan with its principal place of business at 32271 Ford Rd., Garden City, Michigan 48135.

6.      Upon information and belief, Defendant Ghazwan Eeso is an individual domiciled at 7202 Indian Creek Dr., West Bloomfield, Michigan 48322.

7.      Upon information and belief, Defendant Rivian Eeso is an individual domiciled at 7202 Indian Creek Dr., West Bloomfield, Michigan 48322.

8.      Upon information and belief, Defendant Sharf Hauter is an individual domiciled in Hamtramck, Michigan.

9.      Upon information and belief, Defendant EZ Smoke Shop, Inc. is a

corporation registered in Michigan with its principal place of business at 3104 Caniff St., Hamtramck, Michigan 48212.

10.     Upon information and belief, Defendant EZ Smoke Shop 2, Inc. is a corporation registered in Michigan with its principal place of business at 3104 Caniff St., Hamtramck, Michigan 48212.

11.     Upon information and belief, Defendant EZ Smoke Shop Plus, Inc. is a corporation registered in Michigan with its principal place of business at 3104 Caniff St., Hamtramck, Michigan 48212.

12.     Upon information and belief, Fouad Aljalal is domiciled in Hamtramck, Michigan.

13.     Upon information and belief, Defendant Ismail Kaid Al-Madrahi is an individual domiciled at 11914 Moenart St., Detroit, Michigan 48212.

14.     Upon information and belief, Defendant Bilal Mohamed Ali is an individual domiciled in Hamtramck, Michigan.

15.     Upon information and belief, Defendant Malek Distribution, Inc. is a corporation registered in Michigan with its principal place of business at 9723 Conant St., Hamtramck, Michigan 48212.

16.     Upon information and belief, Defendant Fuad Mugali is an individual domiciled at 11682 Lumpkin St., Hamtramck, Michigan 48212.

17.     Upon information and belief, Defendant 94 & Haggerty, Inc. is a

4

Michigan corporation with its principal place of business at 11175 Haggerty Rd., Belleville, Michigan 48111.

18.     Upon information and belief, Defendant 94 & Zeeb, Inc. is a Michigan corporation with its principal place of business at 325 N. Zeeb, Ann Arbor, Michigan 48103.

19.     Upon information and belief, Defendant Abdel Berry is an individual domiciled in Dearborn, Michigan.

20.     Upon information and belief, Defendant Mohasen Moslh is an individual domiciled at 2437 Goodson, Hamtramck, Michigan 48212.

21.     Upon information and belief, Defendant White Star Distribution, Inc. is a Michigan corporation with its principal place of business at 3934 Casmere St., Detroit, Michigan 48212.

22.     Upon information and belief, Defendant Mohamed Qasem is an individual domiciled at 2360 Edwin St., Hamtramck, Michigan 48212.

23.     Upon information and belief, Defendant Detroit Wholesale is a Michigan entity with its principal place of business at 4669 Brookmeadow Dr. SE, Grand Rapids, Michigan 49512.

24.     Upon information and belief, Defendant Hussein Ayyad is an individual domiciled at 4669 Brookmeadow Dr. SE, Grand Rapids, Michigan 49512.

25.     Upon information and belief, Defendant Solaiman Mini Mart, LLC is a

Michigan limited liability company with its principal place of business at 5041 E. 7 Mile Rd., Detroit, Michigan 48234.

26.     Upon information and belief, Defendant Twafig Haidara is an individual domiciled at 3908 Oliver St., Hamtramck, Michigan 48211.

27.     Upon information and belief, Defendant L Abro Distributor LLC is a Michigan limited liability company with its principal place of business at 38132 Dray Dr., Sterling Heights, Michigan 48310.

28.     Upon information and belief, Defendant Luqman Abro is an individual domiciled in Sterling Heights, Michigan.

29.     Upon information and belief, Defendant Reval Distributor is a Michigan entity with its principal place of business at 548 E. 11 Mile Rd., Madison Heights, Michigan 48071.

30.     Upon information and belief, Defendant Riyadh Jaffo Hakeem is an individual domiciled at 11149 Hanna Dr., Sterling Heights, Michigan 48312.

31.     Upon information and belief, Defendant L and R Wholesale LLC is a Michigan limited liability company with its principal place of business at 8653 E. 9 Mile Rd., Warren, Michigan 48089.

32.     Upon information and belief, Defendant Reval Hakeem is an individual domiciled at 11149 Hanna Dr., Sterling Heights, Michigan 48312.

33.     Upon information and belief, Defendants John Does 1-10 are Michigan

entities and/or individuals.

34.     Defendants John Does 1-10 are unknown individuals and/or entities selling and offering to sell the Counterfeit Products in Michigan and throughout the United States.

35.     Upon information and belief, Defendants are in the business of marketing, offering, and selling various vaping devices, including disposable vaping devices.

36.     Personal jurisdiction over Defendants is appropriate because all Defendants are located within this State and thus subject to the general personal jurisdiction of this Court.

37.     The Court has subject matter jurisdiction over this civil action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338 in that this case arises under the Lanham Act (15 U.S.C. § 1051, *et seq.*), as well as 28 U.S.C. § 1367, and pursuant to the statutes and common law of the State of Michigan.

38.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)–(d).

## **BACKGROUND**

### *Breeze Smoke's BREEZE Marks*

39.     Breeze Smoke is engaged in the business of manufacturing and selling a variety of tobacco and vaping products, including disposable electronic vaping devices, under its BREEZE trademarks and trade dress.

40.     Since at least as early May 2019, Breeze Smoke has continuously used its BREEZE trademarks and trade dress in connection with vaping products and related products in Michigan and throughout the United States.  Breeze Smoke has used its BREEZE trademarks and trade dress in connection with disposable vaping products since at least as early as March 2020.

41.     In addition to its widespread and continuous use of the BREEZE trademarks, Breeze Smoke owns United States Trademark Application No. 90/012,117 for the mark BREEZE SMOKE for "Disposable Electronic Cigarettes." A copy of the Trademark Electronic Search System ("TESS") page from the United States Patent and Trademark Office ("USPTO") website showing the details of the BREEZE SMOKE application is attached hereto as **Exhibit A** and incorporated herein by reference.

42.     The BREEZE SMOKE application was filed on June 20, 2020 based on actual use of the mark in United States commerce and asserts use in United States commerce since at least as early as March 1, 2020.

43.     Breeze Smoke also owns United States Trademark Application No. 90/246,820 for the mark BREEZE PLUS for "Disposable Electronic Cigarettes." A copy of the TESS page from the USPTO website showing the details of the BREEZE PLUS application is attached hereto as **Exhibit B** and incorporated herein by reference.

44.     The BREEZE PLUS application was filed on October 10, 2020 based on actual use of the mark in United States commerce and asserts use in United States commerce since at least as early as March 1, 2020.

45.     Breeze Smoke also owns common law trademark rights in the standalone mark BREEZE, which it has continuously used since May 2019. Examples of Breeze Smoke's use of the standalone BREEZE mark in connection with its vaping products are shown below:



46.     Collectively, the BREEZE SMOKE application, the BREEZE PLUS application, Breeze Smoke's common law rights in those marks, and Breeze Smoke's common law rights in the standalone mark BREEZE, shall be referred to herein as the "BREEZE Marks."

47.     Since at least as early as March 2020, Breeze Smoke has also marketed and sold its BREEZE-branded disposable vaping products in a highly distinctive product packaging that consumers instantly recognize and associate exclusively with

Breeze Smoke.  Breeze Smoke's BREEZE product packaging features, among other things, the following distinctive, non-functional elements:

    a.   A rectangular clear plastic outer box with a clear plastic lid;

    b.   Brightly colored cardboard with product labeling that wraps around the bottom portion of the clear plastic box;

    c.   Visibility of the top portion of the vaping pen through the top portion of the clear plastic box;

    d.   The BREEZE Mark displayed prominently and vertically along the body of the vaping pen; and

    e.   A semi-opaque plastic cap over the mouthpiece of the vaping pen

(hereinafter, the "BREEZE Trade Dress").

48.    An example showing Breeze Smoke's use of its highly distinctive BREEZE Trade Dress is below:



49.    The BREEZE Trade Dress is highly inherently distinctive and has also acquired secondary meaning in the minds of consumers.

50.    The BREEZE Trade Dress is non-functional.

51.    Breeze Smoke's BREEZE products are promoted, offered and sold through online retail platforms, including at Breeze Smoke's website www.breezesmoke.com, as well as at a substantial number of bricks-and-mortar locations throughout Michigan and the United States.

52.    Breeze Smoke has spent significant time, effort, and resources establishing its BREEZE Marks and BREEZE Trade Dress in the minds of its customers and the public via advertisements and promotions—including through online advertising and promotion—as representative of Breeze Smoke's high quality tobacco and vaping products.

53.    Breeze Smoke has generated substantial revenue from the sale of products and services under its BREEZE Marks and BREEZE Trade Dress.

54.    As a result of Breeze Smoke's continuous use, extensive sales, advertising, and promotion of its BREEZE Marks and BREEZE Trade Dress, the BREEZE Marks and BREEZE Trade Dress enjoy widespread recognition and an excellent reputation, and are recognized by the public as emanating exclusively from Breeze Smoke and representative of Breeze Smoke's high quality products and services.

55.    As a result of Breeze Smoke's efforts and commercial success in advertising, marketing and promoting products and services under the BREEZE Marks and BREEZE Trade Dress, Breeze Smoke has generated substantial and valuable goodwill in the BREEZE Marks and BREEZE Trade Dress, and the BREEZE Marks and BREEZE Trade Dress have become intangible assets of substantial commercial value to Breeze Smoke.

### *Defendants' Willful and Infringing Use of the BREEZE Marks*

56.    In November 2020, Breeze Smoke became aware that Defendants were and are selling counterfeit BREEZE disposable vaping products (the "Counterfeit Products") in connection with the BREEZE Marks and in packaging that is identical or virtually identical to the BREEZE Trade Dress.

57.

58.    An example of Breeze Smoke's legitimate BREEZE vaping product is shown below next to an example of Defendants' Counterfeit Products on the right:



59.     Additional examples displaying Defendants' infringing uses are attached hereto as **Exhibit C** and incorporated herein by reference.

60.     Defendants are directly competing with Breeze Smoke in that they sell their Counterfeit Products to the same customers or the same or similar classes of customers as Breeze Smoke.

61.     Breeze Smoke has not licensed or otherwise authorized Defendants to use its highly valuable and well-established BREEZE Marks and BREEZE Trade Dress in any manner whatsoever.

62.     Defendants' Counterfeit Products are in no way legitimate Breeze Smoke products; they have not undergone Breeze Smoke's rigorous quality control measures, including but not limited to Breeze Smoke's high standards for manufacturing, production, and product testing that all of Breeze Smoke's legitimate BREEZE products undergo.

63.     Because Defendants' Counterfeit Products have not undergone Breeze Smoke's quality control processing, Breeze Smoke cannot vouch for the safety or quality of Defendants' Counterfeit Products.

64.     Because Defendants' Counterfeit Products have not undergone Breeze Smoke's quality control processing, Defendants' Counterfeit Products are of inferior quality and may be unsafe for use.

65.     Counterfeit vaping products such as Defendants' Counterfeit Products

have been known to pose substantial safety risks for consumers, including but not limited to burning consumers or even exploding while in use.

66.     Defendants are promoting, selling and offering to sell their Counterfeit Products to consumers with the express intent to deceive customers into thinking they are legitimate BREEZE products.

67.     Upon information and belief, Defendants knew of Breeze Smoke's prior use of the BREEZE Marks and BREEZE Trade Dress, were and are well aware of the goodwill and market value of Breeze Smoke's BREEZE Marks and BREEZE Trade Dress, and intentionally chose to sell their Counterfeit Products using the BREEZE Marks and BREEZE Trade Dress to suggest a false affiliation between Breeze Smoke and its goods and services on the one hand and Defendants and their fake goods and services on the other, or to confuse customers about the source of the parties' respective goods.

68.     By selling fake BREEZE disposable vapes, Defendants have intentionally sought to deceive consumers and purchasers as to the nature and source of the Counterfeit Products—namely, Defendants have tried to pass-off the Counterfeit Products as legitimate, when in fact they knew they were not.

69.     Through their unauthorized and infringing uses of the BREEZE Marks and BREEZE Trade Dress, Defendants are deliberately and improperly capitalizing upon the goodwill that Breeze Smoke has built up in its BREEZE Marks and

BREEZE Trade Dress.

70. Defendants' unauthorized, unlawful and intentional use of the BREEZE Marks and BREEZE Trade Dress has caused, and will continue to cause, a likelihood of confusion among consumers and potential consumers as to the source or origin of Defendants' products and the sponsorship or endorsement of those goods and services by Breeze Smoke.

71. As a direct and proximate result of Defendants' unauthorized conduct, Breeze Smoke has been and will continue to be damaged by confusion among consumers and potential consumers as to Breeze Smoke's association or connection with, or endorsement or authorization of, Defendants and/or their Counterfeit Products, at least in part in ways that cannot be adequately measured or fully remedied by monetary damages.

72. As a result of Defendants' intentional misappropriation of the BREEZE Marks and BREEZE Trade Dress for use in connection with their inferior Counterfeit Products, Defendants have caused, and will continue to cause, irreparable injury to Breeze Smoke and have substantially damaged the value of Breeze Smoke's BREEZE Marks and BREEZE Trade Dress.

73. Defendants have unjustly enriched themselves at Breeze Smoke's expense by promoting and selling inferior Counterfeit Products in connection with the BREEZE Marks and BREEZE Trade Dress in a manner that appropriates and

exploits Breeze Smoke's hard-earned goodwill and reputation. Among the benefits that Defendants have gained from their unlawful and willful conduct are increased revenues from the sale of their counterfeit products and services.

74.    In late November 2020, Breeze Smoke's principals and their counsel began contacting Defendants by phone and by letter to provide Defendants notice of their unlawful infringement and to demand that Defendants cease any further marketing, offer, and sale of the Counterfeit Products and immediately remove such products from their stores. Copies of these letters are attached hereto as **Exhibit D** and incorporated herein by reference.

75.    To date, Defendants have not ceased selling or offering to sell their Counterfeit Products and continue to still offer and sell their Counterfeit Products under the BREEZE Marks and BREEZE Trade Dress.

76.    With every day that passes, Defendants' Counterfeit Products become more widely available, compounding safety risks to consumers and irreparable harm to Breeze Smoke.

## <u>COUNT I</u>
## FEDERAL TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1125(a))

77.    Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

78.    Breeze Smoke owns valid and enforceable rights in the BREEZE Marks

in connection with the goods and services it offers and sells in connection therewith by virtue of its extensive use, promotion, and advertisement of the marks, and has possessed such rights at all times material hereto.

79.   Breeze Smoke's use of its BREEZE Marks in connection with tobacco and other vaping products predates any use by the Defendants.

80.   Defendants have knowingly and intentionally used and continue to use in commerce the BREEZE Marks in connection with the vaping and tobacco goods that Defendants sell and offer to sell.

81.   Defendants are selling and offering to sell the Counterfeit Products with full knowledge that they are not legitimate BREEZE products.

82.   Defendants have been informed and are fully aware of Breeze Smoke's extensive prior use of the BREEZE Marks. Defendants know they are misappropriating the BREEZE Marks because they know they are not authorized to sell the Counterfeit Products.

83.   Breeze Smoke has not authorized, licensed, or otherwise condoned or consented to Defendants' use of the BREEZE Marks.

84.   Defendants' use of the BREEZE Marks is likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants and Breeze Smoke, and/or Defendants' goods and services on the one hand and Breeze Smoke's goods and

services on the other, and is likely to cause such people to believe in error that Defendants' goods have been authorized, sponsored, approved, endorsed, or licensed by Breeze Smoke or that Defendants are in some way affiliated with Breeze Smoke.

85.    Defendants' use of the BREEZE Marks is likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants and Breeze Smoke, and/or Defendants' goods and services on the one hand and Breeze Smoke's goods and services on the other, and is likely to cause such people to believe in error that Breeze Smoke's goods have been authorized, sponsored, approved, endorsed, or licensed by Defendants or that Breeze Smoke is in some way affiliated with Defendants.

86.    Such confusion, deception or mistake has occurred, and is likely to continue to occur, as a direct result of Defendants' use of the BREEZE Marks in connection with the display, advertising, promotion, offer of sale and sale of their infringing tobacco and vaping products.

87.    Defendants' actions constitute trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

88.    Defendants' actions described herein were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

89.    Defendants' conduct has occurred in interstate commerce and

substantially impacts interstate commerce.

90.     As a direct and proximate result of Defendants' conduct, Breeze Smoke has suffered damage to the valuable BREEZE Marks, as well as harm to its valuable goodwill and reputation.

91.     Defendants' conduct described herein will continue to cause irreparable damage to Breeze Smoke and confuse the public unless enjoined by this Court.

92.     An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

**COUNT II**
**FEDERAL TRADE DRESS INFRINGEMENT**
**(15 U.S.C. § 1125(a))**

93.     Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

94.     Breeze Smoke owns valid and enforceable rights in the BREEZE Trade Dress in connection with the goods and services it offers and sells in connection therewith by virtue of its extensive use, promotion, and advertisement of the trade dress, and has possessed such rights at all times material hereto.

95.     Breeze Smoke's BREEZE Trade Dress is highly distinctive.

96.     Breeze Smoke's BREEZE Trade Dress has acquired secondary meaning among consumers and the relevant public.

97.     Breeze Smoke's BREEZE Trade Dress is non-functional.

98.     Breeze Smoke's use of its BREEZE Trade Dress in connection with tobacco and other vaping products predates any use by the Defendants.

99.     Defendants have knowingly and intentionally used and continue to use in commerce the BREEZE Trade Dress in connection with the vaping and tobacco goods that Defendants advertise, promote, distribute, offer to sell, and sell.

100.    Defendants knowingly and intentionally adopted the BREEZE Trade Dress with full knowledge of Breeze Smoke's extensive prior use of the BREEZE Trade Dress.

101.    Defendants have used and are using BREEZE Trade Dress with full knowledge of Breeze Smoke's extensive prior use of BREEZE Trade Dress.

102.    Breeze Smoke has not authorized, licensed, or otherwise condoned or consented to Defendants' use of the BREEZE Trade Dress.

103.    Defendants' use of the BREEZE Trade Dress is likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants and Breeze Smoke, and/or Defendants' goods and services on the one hand and Breeze Smoke's goods and services on the other, and is likely to cause such people to believe in error that Defendants' goods have been authorized, sponsored, approved, endorsed, or licensed by Breeze Smoke or that Defendants are in some way affiliated with Breeze Smoke.

104.   Defendants' use of the BREEZE Trade Dress is likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants and Breeze Smoke, and/or Defendants' goods and services on the one hand and Breeze Smoke's goods and services on the other, and is likely to cause such people to believe in error that Breeze Smoke's goods have been authorized, sponsored, approved, endorsed, or licensed by Defendants or that Breeze Smoke is in some way affiliated with Defendants.

105.   Such confusion, deception or mistake has occurred, and is likely to continue to occur, as a direct result of Defendants' use of the BREEZE Trade Dress in connection with the display, advertising, promotion, offer of sale and sale of their infringing tobacco and vaping products.

106.   Defendants' actions constitute trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

107.   Defendants' actions described herein were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

108.   Defendants' actions occurred in interstate commerce and substantially impact interstate commerce.

109.   As a direct and proximate result of Defendants' conduct, Breeze Smoke has suffered damage to the valuable BREEZE Trade Dress, as well as harm to its

valuable goodwill and reputation.

110.    Defendants' conduct described herein will continue to cause irreparable damage to Breeze Smoke and confuse the public unless enjoined by this Court.

111.    An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

## COUNT III
## FEDERAL UNFAIR COMPETITION
## AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

112.    Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

113.    Breeze Smoke owns valid and enforceable rights in the BREEZE Marks and BREEZE Trade Dress in connection with the goods and services it offers and sells in connection therewith by virtue of its extensive use, promotion, and advertisement of the trade dress, and has possessed such rights at all times material hereto.

114.    Breeze Smoke's use of the BREEZE Marks and BREEZE Trade Dress in connection with tobacco and other vaping products predates any use by the Defendants.

115.    Defendants have knowingly and intentionally used and continue to use in commerce the BREEZE Marks and BREEZE Trade Dress in connection with the vaping and tobacco goods that Defendants advertise, promote, distribute, and sell.

116.   Defendants knowingly and intentionally sell the Counterfeit Products with the BREEZE Marks and BREEZE Trade Dress with full knowledge of Breeze Smoke's extensive prior use of the BREEZE Trade Dress.

117.   Breeze Smoke has not authorized, licensed, or otherwise condoned or consented to Defendants' use of the BREEZE Marks and BREEZE Trade Dress.

118.   Defendants' use of the BREEZE Marks and BREEZE Trade Dress is likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants and Breeze Smoke, and/or Defendants' goods and services on the one hand and Breeze Smoke's goods and services on the other, and is likely to cause such people to believe in error that Defendants' goods have been authorized, sponsored, approved, endorsed, or licensed by Breeze Smoke or that Defendants are in some way affiliated with Breeze Smoke.

119.   Defendants' use of the BREEZE Marks and BREEZE Trade Dress is likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants and Breeze Smoke, and/or Defendants' goods and services on the one hand and Breeze Smoke's goods and services on the other, and is likely to cause such people to believe in error that Breeze Smoke's goods have been authorized, sponsored, approved, endorsed, or licensed by Defendants or that Breeze Smoke is in some way

23

affiliated with Defendants.

120.   Such confusion, deception or mistake has occurred, and is likely to continue to occur, as a direct result of Defendants' use of the BREEZE Marks and BREEZE Trade Dress in connection with the display, advertising, promotion, offer of sale and sale of their infringing tobacco and vaping products.

121.   Defendants' actions constitute unfair competition, false designation of origin, false or misleading description of fact, and false or misleading representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

122.   Defendants' actions described herein were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

123.   As a direct and proximate result of Defendants' conduct, Breeze Smoke has suffered damage to the valuable BREEZE Marks and BREEZE Trade Dress, as well as harm to its valuable goodwill and reputation.

124.   Defendants' conduct described herein will continue to cause irreparable damage to Breeze Smoke and confuse the public unless enjoined by this Court.

125.   An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

**COUNT IV**
**VIOLATIONS OF MICHIGAN CONSUMER PROTECTION ACT**
**(M.C.L § 445.901)**

126.   Breeze Smoke realleges and incorporates by reference the allegations

24

contained in the preceding paragraphs as if fully set forth herein.

127.   Defendants' acts constitute unfair, unconscionable, or deceptive methods, acts or practices in conducting trade or commerce in violation of Mich. Comp. Laws § 445.901 *et seq.*

128.   Defendants' unauthorized use of the BREEZE Marks and Trade Dress in connection with their promotion, offer and sale of their counterfeit vaping products is likely to cause confusion or misunderstanding as to the source, sponsorship, approval or certification of the goods in violation of Mich. Comp. Laws § 445.903(1)(a).

129.   Defendants' unauthorized use of the BREEZE Marks  and Trade Dress have caused and, unless enjoined by this Court, will continue to cause substantial injury to the public and to Breeze Smoke.  Based on Defendants' unlawful activities, Breeze Smoke is entitled to injunctive relief and to recover damages, and as appropriate, punitive damages, costs and reasonable attorneys' fees.

### COUNT V
### COMMON LAW UNFAIR COMPETITION

130.   Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

131.   Defendants were aware of Breeze Smoke's prior use of the BREEZE Marks and used the BREEZE Marks in disregard of Breeze Smoke's rights.

132.   Defendants' actions have resulted in the misappropriation of, and

trading upon, Breeze Smoke's valuable goodwill and business reputation at Breeze Smoke's expense and at no expense to Defendants.  The effect of Defendants' misappropriation of the goodwill symbolized by the BREEZE Marks and Trade Dress is likely to unjustly enrich Defendants, damage Breeze Smoke, and confuse and/or deceive the public.

133.   Defendants' actions constitute unfair competition with Breeze Smoke, which has caused and will continue to cause irreparable injury to Breeze Smoke's goodwill and reputation unless enjoined.

134.   An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

## COUNT VI
## UNJUST ENRICHMENT

135.   Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

136.   By misappropriating Breeze Smoke's valuable goodwill and reputation through the improper use of the BREEZE Marks and Trade Dress, Defendants have been unjustly enriched to the material detriment of Breeze Smoke.

137.   Defendants are realizing profit and will continue to realize a profit from their improper use of the BREEZE Marks and Trade Dress.

138.   Defendants' actions have directly and proximately caused irreparable harm to Breeze Smoke and its valuable goodwill and reputation, and will continue

to harm Breeze Smoke unless enjoined.

139.    An award of money damages alone cannot fully Breeze Smoke for its

injuries, and Breeze Smoke has no adequate remedy at law.

140.    Breeze Smoke is entitled to compensatory damages in the form of

restitution and such other and further relief as the Court deems equitable and just.

## **PRAYER FOR RELIEF**

WHEREFORE, Breeze Smoke respectfully requests and prays that the Court:

A.    Enter judgment in Breeze Smoke's favor and against Defendants on all counts of the Complaint;

B.    Determine that Defendants willfully violated the Lanham Act, that Breeze Smoke has been damaged by such violations, and that Defendants are liable to Breeze Smoke for such violations;

C.    Determine that Defendants have committed common law trademark infringement, that Breeze Smoke has been damaged by such infringement, and that Defendants are liable to Breeze Smoke for common law trademark infringement;

D.    Determine that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a);

E.    Under all claims for relief, issue a preliminary and permanent injunction enjoining Defendants and any of their officers, employees, agents, successors and assigns, and all those in active concert and participation with Defendants, and each of them who receives notice directly or otherwise of such injunctions:

1.    from using in any manner the BREEZE Marks and BREEZE Trade Dress and any variations thereof, or any other name, term, phrase, mark, design, device or symbol which so resembles or is similar to the BREEZE Marks and/or BREEZE Trade Dress so as to be likely to cause confusion, mistake or deception as to source, origin, sponsorship, approval, affiliation or the like;

2.      from further unlawfully trading upon and misappropriating the goodwill and reputation of Breeze Smoke and competing unfairly with Breeze Smoke;

3.      from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts; and

4.      from making any false or misleading descriptions of fact or false or misleading representations of fact in their commercial advertising or promotion about the nature, characteristics, or qualities of their products or related commercial activities.

F.      Order Defendants to deliver up for destruction all products, labels, signs, prints, packages, wrappers, receptacles, advertisements, or other materials in their possession, custody or control, and in the possession, custody or control of those in active concert or participation or otherwise in privity with them, which display or contain the BREEZE Marks and/or the BREEZE Trade Dress, or any variations thereof, or which constitute and/or bear any other device, representation or statement in violation of the injunction herein requested by Breeze Smoke, and that Defendants be ordered to deliver up for destruction all means of making the same;

G.      Order Defendants to file with the Court and serve on Breeze Smoke, within thirty (30) days after service on any of them of such injunction (or such extended period as the Court may direct), a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

H.      In accordance with 15 U.S.C. § 1118, order Defendants to deliver to Breeze Smoke, at Defendants' expense, for destruction or other disposition, all products, including, without limitation, all labels, packaging, signs, prints, advertisements, promotional, and other materials, incorporating, bearing, or displaying a trademark confusingly similar to the aforementioned trademarks and trade dress of Breeze Smoke or which otherwise violates 15 U.S.C. § 1125(a), in the possession, custody, or control of Defendants, as well as any reproduction, counterfeit, copy, or colorable imitation thereof, and all other materials or means of making the same;

I.      Order that Defendants account for and pay over to Breeze Smoke all

gains, profits, and advantages derived from their violation of 15 U.S.C. § 1125(a) and the common law, and also pay to Breeze Smoke the damages which Breeze Smoke has sustained by reason of such violations, together with legal interest from the date of accrual thereof;

J.    Because of the willful nature of said violations and pursuant to 15 U.S.C. § 1117(a), order that Defendants be required to pay over to Breeze Smoke enhanced damages;

K.    Order that Defendants be required to pay Breeze Smoke's reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a);

L.    Award interest, including pre-judgment interest on the foregoing sums;

M.    Award Breeze Smoke an amount of money to undertake corrective advertising;

N.    Award Breeze Smoke punitive damages based on Defendants' willful and intentional conduct; and

O.    Grant Breeze Smoke any other relief as the Court deems necessary and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Breeze Smoke demands a trial by jury on all issues present in this civil action.

Dated:  December 30, 2020                    Respectfully submitted,

                                                   By:  */s/ Andrew M. Pauwels*
                                                Jeffrey K. Lamb (P76738)
                                                Andrew M. Pauwels (P79167)
                                                HONIGMAN LLP
                                                660 Woodward Ave., Suite 2290
                                                Detroit, MI 48226
                                                Telephone: (313) 465-7000
                                                jlamb@honigman.com
                                                apauwels@honigman.com

                                                Mary A. Hyde
                                                HONIGMAN LLP
                                                155 North Wacker Dr., Suite 3100
                                                Chicago, IL 60606
                                                Telephone:  (312) 701-9360
                                                mhyde@honigman.com

                                                *Attorneys for the Plaintiff*

## **VERIFICATION**

I, Steven Haddad, a Managing Member of Breeze Smoke LLC, declare that I have reviewed the allegations set forth in the Verified Complaint and have authorized the filing of this Verified Complaint.  I further declare under penalty of perjury that all of the allegations made in the foregoing Verified Complaint of which I have personal knowledge are true and correct, and that all allegations of which I do not have personal knowledge I believe to be true based on information received from my employees, distributors, and customers.

_____

Steven Haddad

Dated: December 30, 2020